Fantroy v. Homecomings Financial














IN THE
TENTH COURT OF APPEALS
 

No. 10-03-00205-CV

     JESSIE FANTROY,
                                                                              Appellant
     v.

     HOMECOMINGS FINANCIAL 
     NETWORK, INC.,
                                                                              Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # C200000088
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      Jessie Fantroy tendered an appellant’s brief for filing with the Clerk of this Court which
failed to comply with the requirements of the Rules of Appellate Procedure in several respects. 
The Clerk notified Fantroy that these deficiencies must be corrected within ten days or the
appeal would proceed as if no appellant’s brief had been filed. See Tex. R. App. P. 38.9(a). 
Fantroy failed to comply. The Clerk then notified Fantroy that the appeal would be dismissed
for want of prosecution unless a response showing grounds for continuing the appeal was filed
within ten days. Fantroy has filed a response which does not address the deficiencies in the
brief. Accordingly, the appeal is dismissed for want of prosecution. Id. 38.8(a)(1).

                                                                   PER CURIAM

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
Appeal dismissed
Opinion delivered and filed March 31, 2004
[CV06]



ly: 'CG Times', serif">As a general rule, sometimes termed the “opinion rule,” the testimony of a
witness must be limited to the facts of which he has personal knowledge 11, and
he must not give his individual opinion or conclusion, based on those facts 12. 
It is ordinarily for the jury to draw the proper deductions arising from his
statement of the facts 13.”
The internal numbers apparently refer to footnotes in the original text not included in the brief.
      At trial, Smith did not attack the officer’s expertise to administer the test. In response to
Smith’s argument to the trial court that Officer Neal was not qualified to testify about the accuracy
of the test the State argued that he was a certified field sobriety practitioner. Smith responded:
“He might be qualified to say what he did, but he is not qualified to give conclusions as to the
scientific basis and the reliability of it.” Additionally, Smith’s complaint is not directed at the
correlation of the “angle of onset of nystagmus” (the point at which the eye begins to jerk) in
conducting the HGN test to determine Smith’s precise blood alcohol content (BAC). See Emerson
v. State 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). The holding in Emerson is that a witness
with a practitioner’s certification cannot testify about a precise BAC based upon the angle of onset
of nystagmus. In conducting the scientific test there was simply too great a margin of error to
consider the results reliable as a means to determine the precise BAC. But that is not what the
officer was asked. Smith does not allege an Emerson type violation at trial or on appeal. 
Accordingly, the discussion in the majority opinion regarding the propriety of correlating
performance on the standardized field sobriety test to BAC is not before us.
      The reliability as an indicator of intoxication of each of the standardized field sobriety tests
at issue has been well documented. Id. The extensive scientific literature allowed the court in
Emerson to conclude that the HGN test is a reliable scientific test as an indicator of intoxication
by being impaired, but not of being intoxicated by having a BAC in excess of the maximum legal
limit. The question presented to us, which Emerson did not address, is whether the certified
practitioner can testify regarding the statistical accuracy of the field sobriety test as a reliable
indicator of intoxication by being impaired, notwithstanding that Neal had not conducted any of
the scientific studies which had validated the reliability of the test.
      The questions and answers leading up to Neal’s testimony about the percentage accuracy of
the HGN test drew several objections. While there was an objection of a fourth amendment
violation, most of the objections related to Neal’s lack of qualifications as an expert to testify about
the accuracy or reliability of the test. The portion of the record set forth below is the manner in
which the percentage of accuracy of the HGN came into evidence:
Q. Okay. What is the decision point to determine whether or not there is a
probability that the person is intoxicated?
 
A. There are six cues.
 
MR. DUNNAM: Can we have a running objection to all this pertaining to his
expertise?
 
THE COURT: All right. Yes, sir.
 
A. There are total of six cues. And any four or more cues would indicate a high
level of intoxication, over a .08. And there is an eighty-eight percent chance on this test
alone, this one test with no other indicator, you don’t smell alcohol or anything else,
nothing else to indicate intoxication, by this one test there is an eighty-eight percent
chance of that person is intoxicated on some kind of drugs or alcohol.
      The request for a running objection relates to Smith’s earlier objection regarding Neal’s
qualifications to testify regarding the reliability of the HGN test. Neal had testified that the HGN
test had been “Tested nationwide and accepted nationwide before the courts.” Smith made the
following objection and motion which were overruled:
Object to this. Not qualified to give opinions whatsoever in any respect and
prejudicial to the rights of the defendant. Move for the Court to instruct the jury not to
consider any of his testimony about the reliability of any such tests because he knows
nothing about it in truth and in fact. He is not scientifically qualified, has no
qualifications whatsoever as an expert. And we move the Court to instruct the jury not
to consider any of his testimony as to the reliability of this gaze nystagmus test. He is
not a scientist. He is not an expert whatsoever.
 
      The dangers of running objections are well documented in the decisions of this State. But in
view of the previous objections, including the one quoted above, the trial court was adequately
apprized by the request for a running objection that the focus of the complaint was directed at
Neal’s testimony regarding the reliability of the HGN test as an indicator of intoxication. This
fairly includes an objection to the percentage accuracy of the HGN test. Accordingly, Smith has
adequately preserved this issue for our review.
      To be useful to the jury, the officer must be able to testify that the presence of four or more
clues on the HGN test indicates that the subject is intoxicated. If the officer could only testify that
there were a certain number of clues present it would not assist the jury in determining the issue. 
Because it takes the presence of at least four clues on the HGN test to make a reliable
determination of intoxication, testimony that a certain number of clues were present without also
testifying that it takes at least four clues on the HGN test to indicate intoxication, could actually
mislead the jury. For example, if only three factors were present in the HGN test, it is not a
scientifically reliable indicator that the subject is intoxicated. But the jury may improperly
consider the presence of three of six clues evidence of intoxication if the officer was prohibited
from testifying that it takes the presence of at least four clues before the HGN test is a reliable
indicator of intoxication.
      But there is a point beyond which a certified field sobriety practitioner may not testify. While
the officer can testify that the presence of four clues on the HGN test is an indicator of
intoxication, it does not mean that the officer can testify that based on the test results there is an
88% probability that the subject is intoxicated. The officer has not performed the reliability
analysis, could not explain it, and thus cannot give an opinion about it. Thus the officer may
testify based upon his expertise as a certified field sobriety practitioner that a certain number of
clues is an indication of intoxication. But a certified field sobriety practitioner cannot testify as
to the statistical reliability of the field sobriety test.
      In this case, the question asked by the state was “What is the decision point to determine
whether or not there is a probability that the person is intoxicated?” This question called for a
simple numeric response—four. The officer’s actual response included this answer but went on
to opine that four or more clues indicated a BAC greater than .08 and that based on the test results
it was 88% probable that Smith was intoxicated. The question did not call for improper expert
testimony. To the extent that Neal’s answer went beyond the question, it would have been
preferable for Smith to interpose an objection that the answer was not responsive to the question
and ask that the improper testimony be stricken. He did not. The running objection, however,
was adequate to preserve the complaint about the officer’s testimony regarding the percentage of
accuracy of the HGN test. The trial court erred in not striking this improper portion of Neal’s
testimony.
      In issue 15, Smith complains that testimony elicited about the accuracy of the walk-and-turn
test was improperly admitted. Unlike the question about the HGN test, the question on the walk-and-turn test did not ask about the number of clues required to indicate that the subject was
intoxicated. The State asked Neal “What is the rate of accuracy on the walk and turn test?” Smith
objected “I don’t know if we have a bill on this or not. This man’s wholly unqualified to give any
opinion about this.” The running objection was granted, and the objection was overruled. The
trial court erred in overruling the objection. The question inquired about the statistical reliability
of the walk-and-turn test. The officer was not qualified to give an opinion regarding the accuracy
of the test. The officer’s response was “Again that rate of accuracy is if they fail two cues or
more, the rate of accuracy is seventy-nine percent accurate. And that’s they would be level 0.08
BAC or higher, if they fail any two cues of the eight cues. In this case he failed four of them.” 
In addition to the question calling for improper testimony regarding the reliability of the test, the
response also included an effort to correlate test results with BAC. There was no objection to this
non-responsive portion of the answer nor is there a complaint raised about this attempted
correlation on appeal. The trial court erred in overruling the objection to Neal’s testimony
regarding the statistical reliability of the walk-and-turn test as an indicator of intoxication. 
      In issue 16, Smith complains that the trial court erred in admitting Neal’s testimony about the
accuracy of the one-leg-stand test over Smith’s running objection that Neal was not qualified to
give an expert opinion on the reliability of the test. Although Smith’s brief cites only the
admission of this testimony over the running objection, he had previously objected to the same
testimony as follows:
Q. Are you familiar with the studies in regard to the one leg stand test?
 
A. Yes. This test, when tried to engage [trying to gauge] a point .08 level blood
alcohol content, the test is eighty-three percent.
 
MR. DUNNAM: We object to this. Move the Court to strike it and the jury not
consider one word of this testimony upon the grounds his conclusions of a witness who
is wholly unqualified to give any such conclusion. And it is highly prejudicial to the
rights of the defendant. Move the Court to strike it and order the jury not to consider it.
The objection was overruled and Smith was given a running objection. Neal then completed his
answer as follows:
A. You are trying to gauge a .08 percent blood alcohol content and the accuracy rate
is eighty-three percent accurate if that person exhibits two or more of the four cues. So
any person exhibits two or more of the indications, eighty-three percent, two or more,
they would be intoxicated at a .08 or above.
 
 And, of course, we are trying to gauge the alcohol content, but that also includes
drugs or alcohol they would be intoxicated on drugs or alcohol eighty-three percent
chance.

As with the other test, the trial court erred in allowing Neal to testify regarding the statistical
accuracy of the one-leg-stand test.
Conclusion
      I do not join the majority opinion to the extent it discusses other issues and purports to make
holdings on issues not presented by the brief in issues 14, 15, and 16. As indicated above, the
brief was very limited. Our opinion should likewise be limited. Accordingly, this concurring
opinion addresses only those issues raised by the brief necessary to the disposition of issues 14,
15, and 16. I join the remainder of the majority opinion, including the harm analysis on issues
14, 15, and 16.

                                                                         TOM GRAY
                                                                         Justice

Concurring opinion delivered and filed December 5, 2001
Publish